### CONNOLLE et al. v. CITY OF NEW ORLEANS et al. *
### No. 14412.

Court of Appeal of Louisiana. Orleans.
June 29, 1933.

Walter M. Barnett, Jr., of New Orleans, for appellants.

L. L. Dubourg, of New Orleans, for appellees.

JANVIER, Judge.

Plaintiffs are the owners of a large number of pieces of real estate in the city of New Orleans.

They allege that Mr. and Mrs. Walter P. Connolle, for and on behalf of themselves as well as on behalf of the other two plaintiffs, paid to the city the taxes due on the said properties for the year 1932, and that there were delivered to them temporary receipts for the said payments, but that later the city claimed that in making said payments Mr. and Mrs. Connolle had made an error to the extent of $400, and that the clerk who made the said collection had himself fallen into error in counting the cash which had been received, and had, on discovering the alleged error, prevailed upon Mr. and Mrs. Connolle to surrender the said receipts, and that the said receipts are therefore now in the possession of the city.

Asserting that there was in fact no error, that the city has no right to retain the said receipts, and that they have paid all said taxes in full, plaintiffs seek, by mandamus, to compel the city to deliver to them the said receipts.

In the district court the writ of mandamus was made peremptory, and the city was ordered to deliver to plaintiffs the said receipts. From that judgment the city of New Orleans has appealed.

The question presented is solely one of fact. Mr. and Mrs. Connolle claim that they handed to the clerk in the tax office the sum of $1,800 in cash, while the contention of the city is that the amount was only $1,400.

The taxes due amounted to $1,640.56, and when plaintiffs, Mr. and Mrs. Connolle, called at the clerk's window to ascertain how much was due, the clerk took the various warrants, there being more than thirty, and added the amounts on an adding machine. He stated that thereupon he showed to Mr. Connolle the adding machine slip which showed a total of $1,640.56, and that thereafter the said Connolle spoke to Mrs. Connolle, who was nearby, and obtained from her a large amount of currency, which he (the said Connolle) then handed to the said clerk. The clerk states that he then counted the money, and, believing that the amount was $1,800 gave to Connolle change in the sum of $159.44. He says that when he had given to Connolle the said change and had handed him the receipts Mr. and Mrs. Connolle left the tax office, and that immediately thereafter he realized that he had made a mistake to the extent of $400, and that leaving his cage in the custody of two other clerks, he ran after and overtook the Connolles a few squares away.

He persuaded them to return with him to the tax office and there told them that he had made a mistake.

Plaintiffs maintain that there was no mistake; that the said clerk was given $1,800 and not $1,400, as he asserts, and they declare that when the cash was given to the said clerk it had been counted twice carefully and was then counted again by the clerk.

The evidence shows to our satisfaction that when Mr. and Mrs. Connolle returned with the clerk and were told that an error had been made they denied that there had been an error, but refused to discuss the matter or to give any information as to the amount which they had with them when they came into the office, or the various amounts which they had paid out there or elsewhere, and particularly refused to state how much remained in their possession.

We are also well convinced that on the next day, when Mr. and Mrs. Connolle, at the request of the officials in the tax office, returned to adjust the matter, they again refused to discuss the details referred to, and, in fact, did not do so until some time later, when they again returned with their attorney. It is most damaging to plaintiffs' case that Mr. and Mrs. Connolle were unwilling to give freely the information in regard to the sum of money which they had in their possession when they arrived at the city hall and that they also refused to state how much was in their possession after they had completed the transaction in question, because it is quite evident that, had they done so, a simple deduction of the amounts expended from the sum originally in their possession would have shown how much should have remained. Furthermore, it is most remarkable that they left the tax office that evening before having the matter adjusted, and that, although they knew that there was a possibility of their having to pay a further sum of $400, they made no effort at adjustment and, without serious protest, left in the possession of the officials of the tax office the receipts which they now claim plaintiffs are entitled to.

Nor can we lose sight of the fact that they refused to discuss the matter when, on the night of the happening, Mr. and Mrs. Connolle were visited at their home by one of the clerks of the tax office who by chance was acquainted with them, and who called on them in the hope that he could, by discussing with them their various transactions, persuade them that they had made a mistake and had actually paid $400 less than they thought they had.

Another damaging fact is that later, when they gave the information which the tax officials had for some time been endeavoring to obtain, that information when analyzed showed that, when the entire transaction was over, according to their own figures, they had in

their possession nearly $400 more than they should have had.

Still another circumstance which we have been unable to eliminate from our consideration is that when they first arrived at the city hall they brought with them, if their own figures are correct, nearly $500 more than they expected to need for the various taxes which they intended to pay. They conducted the entire transaction in cash. Nearly $2,700 in currency was carried with Mr. and Mrs. Connolle, although they needed less than $2,300, and, even conceding that they thought it advisable to have a little more than necessary so that any small additions to the tax bills might be taken care of, it was very evident to them that they would not need more than twenty-three or twenty-four hundred dollars at most.

The record convinces us that the clerk discovered the error within a very few moments after the departure of the Connolles, and that he at once ran after them, and that they are mistaken in their statement that they remained for nearly a half hour, and we are also convinced that upon the return of the clerk the cash was checked by one of the officials, and that there was found at least $400 less than there should have been.

The clerk explains to our complete understanding how he made the error and how he immediately realized that he had done so. He states that the money was given him in ten and in twenty dollar bills, and that when he had completed the counting of the ten dollar bills of which there were one hundred he started to count the twenty dollar bills, of which there were twenty, and that as he started to count the twenties "Instead of counting one, two three, I counted two, four, six, eight until I had forty; then I doubled it again, which would have made $800.00." In other words, he stated that when he started to count he counted each twenty as two tens and then, after he had completed the count of the twenties, forgot that he had counted each one as two and then doubled the count again. The human mind is not susceptible of mechanical accuracy and oftentimes makes just such mistakes. Likewise the human mind often makes just such a mistake and then instinctively realizes the mistake. Here it flashed suddenly upon his mind that he had made a mistake, and he immediately, without waiting to verify his conclusion that there had been an error, rushed after the Connolles realizing that the error must be at once brought to their attention. When the check was made it proved that he was correct.

We find inaccuracies and inconsistencies in the testimony of both Mr. and Mrs. Connolle, and, when we take into consideration the various facts to which we have alluded, we find ourselves unable to believe that the amount handed to the clerk by Mr. Connolle was as much as Mr. and Mrs. Connolle believe that it was.

We well realize that there is involved only a question of fact and that the district judge saw and heard the witnesses, but we have checked carefully the testimony and have particularly taken into consideration the coincidences that the amount of the shortage is almost exactly the amount of the unnecessary money which plaintiffs claim they had with them, and is also almost exactly the amount which after the transaction was closed remained in their hands in excess of the amount they should have had if they brought with them the amount they state they brought and spent what they claim they spent.

There is one fact shown in the record of which we cannot lose sight and which we do not understand, and that is that one of the officials insists that when the cash was checked the shortage was not only the $400 which the clerk claims resulted from the error, but also included $159.44 which, it will be recalled, was the amount of change handed by the clerk to Mr. Connolle. We have read the record several times in an effort to understand this statement, and believe that the said official is in error and that the actual shortage is only $400, but concede that the said official states positively that the total amount is $559.44. If that be true, it does not change our view that $400 of it results from the error referred to.

Counsel for plaintiffs states that it is impossible to believe that Mr. Connolle, if he knew that the amount of taxes due was more than $1,600, would have handed to the clerk only $1,400.

We feel that that would be no more remarkable than that the clerk, having added the various warrants on the adding machine and having shown to Connolle the adding machine slip in which a total of $1,640.56 appeared, should have demanded $1,800.

That there was an error may have resulted from the fact that Mr. Connolle is slightly deaf. But, whatever may have been the cause of it, we feel that there was an error and that only $1,400 was handed to the clerk.

The judgment appealed from is annulled, avoided, and reversed, the alternative writs are recalled and annulled, and the suit of plaintiffs is dismissed, at their cost.

Reversed.